UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARATHON PETROLEUM CO.,

           Plaintiff,

v.                                               Case Number 12-15010
                                               Honorable Thomas L. Ludington

KOC, INC. et al.,

           Defendants.

_____/

OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

A president of a company executes a personal guarantee of a loan credit providing that he "unconditionally guarantee[s] you [Ashland Oil], your successors and assigns, the due and regular payment of such sum or sums of money . . . owed to you." Ashland later forms a joint venture, assigning its rights in the guarantee to the joint venture. The president's company then uses the loan credit to borrow more than $1.5 million from the joint venture. The question is whether the guarantee obligation extends to this debt. Asserting that it does not, the president moves for partial summary judgment.[1] For the following reasons, the motion will be denied.

I

A

Benjamin Karbowski was the president of KOC, Inc., formerly known as Karbowski Distributing, Inc., and doing business as the Karbowski Oil Company. *See* Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. D.

---

[1] More precisely, his trust does. The president died during the pendency of this action, and his trust has been substituted as a defendant.

He executed the personal guarantee in question with two siblings in favor of Ashland Oil, Inc., an oil company incorporated and headquartered in Kentucky. *See* Karbowski Guarantee, *attached as* Def.'s Mot. Summ. J. Ex. A.

The guarantee, as noted, provides that the guarantors "unconditionally guarantee" repayment to Ashland Oil and its "successors and assigns." *Id*. Specifically, the guarantee provides:

> In consideration of your supplying Karbowski Oil Co. of Bay City, MI, hereinafter called the Debtor, with goods and merchandise to be used or offered for sale by Debtor, *the undersigned hereby jointly and severally unconditionally guarantee you, your successors and assigns, the due and regular payment of such sum or sums of money as are now due or may hereafter at any time and from time to time be owed to you by the Debtor*.

*Id*. (emphasis supplied). The guarantee also contains a choice of law provision providing: "This guarantee shall be governed by Kentucky law." *Id*.

**B**

The guarantee was executed in 1994. *Id*. In 1997, Ashland Oil and the Marathon Oil Company entered into a joint venture, forming a Delaware limited liability company known as Marathon Ashland Petroleum LLC ("the joint venture"). *See* Pl.'s Resp. Ex. B (attaching certificate of formation). The joint venture received all of Ashland Oil's "tangible assets, intangible assets, Contracts, Permits, and other rights, wherever located." *Id*. Ex. C.

Benjamin Karbowski was notified of the joint venture's creation in December 1997. *See id*. Ex. D. The notice explained: "You are probably aware that Marathon Oil Company and Ashland Oil, Inc. have formed a new company — Marathon Ashland Petroleum LLC — which will succeed to most of the refining and marketing operations of Marathon and Ashland." *Id*. The notice concluded: "Please sign this letter, and return it to us in the envelope provided by December 23, 1997. Your signature indicates your authorization for Marathon Ashland

Petroleum LLC to draft your account." *Id.* (emphasis omitted). Mr. Karbowski promptly signed the letter as "[a]knowledged and accepted" and returned it to the joint venture. *See id.*

### C

In 1998, Karbowski Oil and the joint venture executed a terminal access agreement. *See* Compl. Ex. B (attaching terminal access agreement). The agreement permitted Karbowski Oil to withdraw petroleum products from the joint venture's terminal, with Karbowski Oil promising to bear responsibility for "all taxes, costs, charges and expenses associated with such withdrawn product." *Id.* ¶ 5.

To facilitate payment, Karbowski Oil also executed an electronic transfer authorization agreement. *See* Compl. Ex. C (attaching electronic transfer authorization agreement). This agreement authorized the joint venture "to initiate debit or credit entries" to specific Karbowski Oil bank accounts and authorized the banks "to debit or credit such entries to the [a]ccount." *Id.*

### D

In 2005, the joint venture was renamed Marathon Petroleum Company LLC, a Delaware limited liability company. *See* Pl.'s Resp. Ex. B (attaching certificate of formation). Five years later, it was converted from an LLC to a limited partnership and renamed Marathon Petroleum Company LP, the plaintiff in this case. *See id.* (attaching certificate of conversion).

### E

In 2012, Karbowski Oil allegedly began experiencing "financial difficulties." Compl. ¶ 30. And Karbowski Oil's bank notified Plaintiff that there are insufficient funds to pay the debits submitted to the bank. Moser Aff. ¶ 3, *attached as* Pl.'s Resp. Ex. G.

Presently, Karbowski Oil owes Plaintiff a little more than $1.5 million. *Id*. (As of November 2012 the past due amount was $1,500,509.18. *Id*.) Although demand has been made on Karbowski Oil's owners and principals, payment has not been forthcoming. *Id*. ¶¶ 6–7. And so this litigation has ensued.

### F

In November 2012, Plaintiff filed a ten-count complaint against Karbowski Oil, Benjamin Karbowski, Jeffrey Karbowski, Jerry Karbowski, and The John A. Karbowski Trust. ECF No. 1. Pertinent to the present motion, count seven asserts a breach of contract claim against Benjamin Karbowski based on his personal guarantee. *See* Compl. ¶¶ 121–27.

Benjamin, however, has passed beyond this Court's jurisdiction. *See* Stipulated Order of Substitution, ECF No. 18. He died on February 7, 2013. *Id*. The following month, a stipulated order was entered substituting in his place the Benjamin A. Karbowski Restated Trust ("Trust"). *Id*.

The Trust now moves for partial summary judgment asserting that it is not liable because the guarantee that Benjamin Karbowski executed is a "special guarantee." Def.'s Mot. 5–8. The Trust writes: "Benjamin signed a special guarantee with Ashland. . . . [So Plaintiff] can enforce the guarantee with respect to debts already owing to Ashland. [Plaintiff], however, cannot enforce the guarantee with respect to subsequent credit extended by it." *Id*. at 6.

### II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III

### A

A federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). Here, that state is Michigan.

Michigan follows the approach of the *Restatement (Second) of Conflict of Laws*, which generally "permits the application of the parties' choice of law." *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703–04 (Mich. 1995) (citing *Restatement (Second) of Conflict of Laws* § 187 (1971)).[2] Here, as noted, the guarantee provides that the parties choose to be governed by Kentucky law. That state's substantive law applies.

### B

---

[2] This rule is subject to two exceptions, neither of which is applicable in this case. *See Chrysler Corp.*, 528 N.W.2d at 703–04. The first exception "provides that the choice of law will not be followed if the chosen state has no substantial relationship to the parties or the transaction, or when there is no reasonable basis for choosing that state's law." *Id.* (citing *Restatement* § 187(2)(a)). Here, there is a substantial relationship — the guarantee was executed in favor of a company incorporated in and headquartered in Kentucky.

The second exception provides that the choice of law will not be followed if it "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* Personal guarantees are not contrary to Michigan public policy. *See, e.g.*, *Krekel v. Thomasma*, 238 N.W. 255, 257 Mich. (1931).

As a threshold matter, it should be noted that the Trust's motion does not rely on Kentucky law. Or Michigan law, for that matter. Rather, it relies on decisions applying the laws of Florida and Idaho. *See* Def.'s Mot. 5–8 (discussing *New Holland, Inc. v. Trunk*, 579 So. 2d 215 (Fla. Dist. Ct. App. 1991); *Sinclair Mktg., Inc. v. Siepert*, 695 P.2d 385 (Idaho 1985)).

No explanation is given for why the laws of these states apply to a diversity case filed in a federal court in Michigan about a guarantee electing to be governed by Kentucky law. An independent review reveals none. And so the substantive law of Kentucky — the law that actually applies to the guarantee in this case — is examined first.

**1**

Under Kentucky law, as elsewhere, guarantees are a species of contract. *E.g.*, *Citizens Fid. Bank & Trust Co. v. Lamar*, 561 S.W.2d 326, 328 (Ky. Ct. App. 1977); *see generally* E. Allan Farnsworth, *Contracts* § 6.3 (4th ed. 2004) (discussing "contracts to answer for the duty of another"). Thus, what the Trust's obligations are pursuant to the guarantee is a question of contract interpretation.

The primary purpose of contract interpretation, the Kentucky Supreme Court observes, "is to effectuate the intentions of the parties." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005).

This inquiry begins within "the four corners of the document." *Id.*; *compare* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 464 (1897) (noting that a contract is the "external signs" that the parties make, which depends "not on the parties' having *meant* the same thing but on their having *said* the same thing" (emphasis in original)), *with 3D Enters. Contracting Corp.*, 174 S.W.3d at 448 ("The fact that one party may have intended

different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms.").

Thus, "An unambiguous written contract must be strictly enforced according to the plain meaning of its express terms." *Cadleway Props., Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 286 (Ky. Ct. App. 2010) (citing *Allen v. Lawyers Mut. Ins. Co. of Ky.*, 216 S.W.3d 657 (Ky. Ct. App. 2007)). A contract is unambiguous "if a reasonable person would find its terms susceptible to only one meaning." *Cadleway Props.*, 338 S.W.3d at 286 (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).

In making this determination, of course, "the contract must be read as a whole." *Woodruff v. Bourbon Stock Yards Co.*, 149 S.W. 960, 963 (Ky. 1912); *see also Stanley v. Slone*, 287 S.W. 360, 361 (Ky. 1926) ("[I]f the intention of the parties can be determined from the instrument when read as a whole, such intention will be effectuated as the true contract of the parties.").

Here, the guarantee provides that the guarantors, including Benjamin Karbowski, promise Ashland Oil that they "unconditionally guarantee you, your successors and assigns, the due and regular payment of such sum or sums of money as are now due or may hereafter at any time and from time to time be owed to you."

Though self-evident, it bears emphasizing. It is an "unconditionally guarantee" to both Ashland Oil and its "successors and assigns." It provides that we, the guarantors, promise to repay you, Ashland Oil and your successors and assigns, all money "owed to you by the Debtor."

To elaborate in a slightly more technical manner, the subject of the sentence, the guarantors, promise the repayment to the object of the sentence, Ashland Oil and its successors

and assigns. The antecedent of "you" in the phrase "owed to you" is the object of the sentence, Ashland Oil and its successors and assigns — not simply Ashland Oil.

Removing the present and future debts proviso makes this even more plain. That is, eliminate the phrase "as are now due or may hereafter at any time and from time to time," and the guarantee provides that we, the guarantors, "unconditionally guarantee you [Ashland Oil], your successors and assigns, the due and regular payment of such sum or sums of money . . . owed to you."

The guarantee promised to repay all Karbowski Oil's debts to Ashland Oil and its successors and assigns — not simply Karbowski Oil's debts to Ashland Oil. The Trust is not entitled to summary judgment.

### 2

Opposing this conclusion, as noted, the Trust relies on decisions applying the laws of Florida and Idaho.

### a

First, the Trust relies on the Florida District Court of Appeal decision in *New Holland, Inc. v. Trunk*, 579 So. 2d 215 (Fla. Dist. Ct. App. 1991). There, the court observed: "Under the common law which Florida follows, a general guaranty is assignable while a special guaranty is generally not assignable." *Id*. at 217. The court elaborated: "A 'general' guaranty is one addressed to all persons generally and may generally be enforced by anyone to whom it is presented who acts upon it. A 'special' guaranty is one addressed to a particular entity and under it ordinarily only the named or specifically described promisee acquires rights." *Id*. (citing *Brunswick Corp. v. Creel*, 471 So. 2d 617 (Fla. Dist. Ct. App. 1985); *Lee v. Rubin*, 117 So. 2d 230 (Fla. Dist. Ct. App. 1960)).

The Trust reasons from *New Holland* that because Benjamin Karbowski's guarantee "specifically references credit extended by Ashland" it is a "special guarantee." Def.'s Mot. 5. Consequently, the Trust asserts, Plaintiff "cannot enforce the guarantee with respect to subsequent credit extended by it." *Id*. at 6.

But as Plaintiff cogently counters, for more than a century Kentucky law rejected the rule that the Florida court adhered to in *New Holland*. *See* Pl.'s Resp. 8–10 (collecting cases). That is, since at least 1911, guarantees both "general" and "special" are assignable under Kentucky law. *E.g.*, *Rogers v. Harvey*, 136 S.W. 128, 129 (Ky. 1911). Writing in 1918, for example, the Kentucky Supreme Court explained:

> The rule that a special guaranty is not assignable, and which is adhered to in some jurisdictions, is based upon the ground that a special guaranty is given because of a personal confidence in the guaranteed, and a general guaranty is held to be assignable because its execution could not arise from any personal confidence. The reason for this rule, however, fails when the debtor, with the knowledge of the guarantors, executes to the guaranteed negotiable obligations, the very name of which implies that they are likely to be at any time transferred, and the guarantors could not contemplate that a bank should be obliged, if it negotiated the notes held by it, to strip them of their security. The guaranty, in the instant case, contained no condition which rendered it nonassignable.

*McGowan v. Wells' Tr.*, 213 S.W. 573, 577 (Ky. 1919), *quoted in* Pl.'s Resp. 9.

Here, not only did the guarantee lack a "condition which rendered it nonassignable," *id*., it contained terms which *expressly* rendered it assignable. The guarantors, including Benjamin Karbowski, gave their "unconditional guarantee" to Ashland Oil and its "successors and assigns" to repay the money "owed to you." The Trust's reliance on Florida common law as interpreted in *New Holland* is misplaced.

**b**

Next, the Trust relies on an Idaho decision, *Sinclair Marketing, Inc. v. Siepert*, 695 P.2d 385 (Idaho 1985). There, the personal guarantees provided that they would "inure to the benefit

-9-

of, and be enforceable by you Little America, your successors, transferees and assigns." *Id*. at 390. The district court concluded that these guarantees were not assignable. *Id*. at 387. The Idaho Supreme Court reversed and remanded. *Id*. at 389.

In dicta, the court then went on to "discuss the material issues of fact upon which liability of the guarantors will hinge" when the case returned to the district court. *Id*. The court explained that it thought that the guarantees were "ambiguous on the subject of assignability," *id*. at 390, elaborating:

> [Concluding that the guarantees were assignable] would allow Little America to assign or sell the guaranty contracts (without assigning the underlying debt) to anyone, regardless of the circumstances, terms, products purchased or prejudice resulting to the guarantors, hardly a result contemplated by the parties. Therefore we find as a matter of law that the contracts are ambiguous on the subject of assignability. The terms and conditions upon which the contracts allow for an assignment must be resolved based upon the intentions of the parties, which is a factual issue.
>
> If the factfinder determines that the contract allows for assignment, [another] material issue [will be] whether the assignment resulted in an increased risk or prejudice to the guarantor. The individual [guarantors] alleged that the credit limit was controlled by each supplier and that credit extended by [the assignee] was approximately twice the highest amount ever owed to Little America. An increased credit limit after the assignment could be the basis for showing prejudice to the [guarantors].

*Id.* (footnote and quotation marks omitted), *quoted in part in* Def.'s Mot. 7.

Reasoning from this dicta, the Trust writes that "even if the guarantee was contemplated to be enforceable, Benjamin faced an increase in risk and prejudice under the guarantee. [Plaintiff] allowed the line of credit extended to Karbowski Oil Co. to balloon to over $1.5 million." Def.'s Mot. 8. The Trust's assertion lacks merit.

As threshold matter, the first paragraph of the policy-based dictum in *Sinclair Marketing* is unpersuasive. The court, for its part, does not explain how the guarantors would be "prejudiced" if the lender chose to "assign or sell the guaranty contracts (without assigning the

underlying debt)." 695 P.2d at 390. And it is black letter law that when the underlying indebtedness is satisfied, the guarantors obligation to repay that debt is as well. *See generally* 38A C.J.S. Guaranty § 102 ("[A]s a general rule the payment or other satisfaction or extinguishment of the principal debt or obligation by the principal, or by any one for him or her, discharges the guarantor . . . . If the principal obligation is satisfied in part, the guarantor will be discharged pro tanto, or to that extent."). Thus, assigning the guarantee but not the underlying debt does not prejudice a guarantor — the obligation remains precisely the same. Guarantee the debt, unless the debt is satisfied.

Sensibly, the Trust does not argue that it suffers this type of prejudice from the assignment. Rather, the Trust focuses on the second paragraph and asserts that Benjamin Karbowski was prejudiced because Karbowski Oil ran up the loan by more than $1.5 million.

Yet, as noted, under Kentucky law courts are not at liberty to ignore the plain meaning of a contract's express terms. *Cadleway Props.*, 338 S.W.3d at 286. Here, the guarantors gave an "unconditional guarantee" for "the due and regular payment of such sum or sums of money as are now due or may hereafter at any time and from time to time be owed to you." Not a guarantee up to a fixed amount. Not a guarantee up to a certain credit limit. Rather, they guaranteed to repay Karbowski Oil's debt in full, whatever the amount. They are not prejudiced by being held to their bargain. And they do not face an "increased risk" than the one they bargained for — they agreed to assume the risk for Karbowski Oil's debt, however much that might be. The Trust's reliance on *Sinclair Marketing* is misplaced.

## IV

Accordingly, it is **ORDERED** that the Trust's motion for partial summary judgment (ECF No. 20) is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for leave to file sur-reply (ECF No. 29) is **DENIED AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 18, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 18, 2013.

s/Tracy A. Jacobs

TRACY A. JACOBS